71 U.S. 463 (____)
4 Wall. 463
THOMPSON
v.
BOWIE.
Supreme Court of United States.

*465 Messrs. Brent and Merrick, for the holder of the notes, plaintiff in error.
Messrs. W.S. Cox and S.L. Phillips, contra.
*470 Mr. Justice DAVIS delivered the opinion of the court.
Thompson brought suit in the court below to recover on three promissory notes, purporting to be given on the first day of January, 1857, by Bowie to Steer, and indorsed to him. Bowie sought to avoid their payment on the ground that they were founded on a gaming consideration, and therefore void, even in the hands of an indorsee, without notice, because the statute of 9th Anne, avoiding gambling contracts, was in force in the District of Columbia, where they were executed. There was no direct evidence offered on the trial to impeach the consideration of the notes; but what is called circumstantial evidence, in contradistinction to direct evidence, was relied on to prove the defence. A brother of the defendant was called by him, and allowed to testify; that whenever his brother was under the influence of liquor, he had a propensity to gamble, and it is contended, as he was drunk on the morning the notes were given, and as they were in the handwriting of a professional gambler, and payable to the keeper of a gaming-house, the inference *471 is fair and reasonable, that they were given for money won at play.
Did the court err in admitting this evidence?
If it did err in this matter, then the judgment must be reversed, for, undoubtedly, the jury, in the formation of their verdict, must have been greatly influenced by testimony that the general character or habit of Bowie was to gamble when intoxicated.
All evidence must have relevancy to the question in issue, and tend to prove it. If not a link in the chain of proof, it is not properly receivable. Could the habit of Bowie to gamble, when drunk, legally tend to prove that he did gamble on the day the notes were executed? The general character and habits of Bowie, were not fit subjects of inquiry in this suit for any purpose. The rules of law do not require the plaintiff to be prepared with proofs to meet such evidence. That Bowie gambled at other times, when in liquor, was surely no legal proof that because he was in liquor on the 1st day of January, 1857, he gambled with Steer. It is very rare that in civil suits the character of the party is admissible in evidence, and it is never permitted, unless the nature of the action involves or directly affects the general character of the party.[*] Bowie was not charged with fraud, or with any action involving moral turpitude. He was simply endeavoring to show that his own negotiable paper was given for money lost at play; and to allow him, as tending to prove this, to give in evidence his habit to gamble when drunk, would overturn all the rules established for the investigation of truth. When trying a prisoner on an indictment, for a particular crime, proof that he has a general disposition to commit the crime is never permitted.[] If a man charged with the larceny of a horse was proved  in connection with other evidence tending to show his guilt  to be drunk on the day the horse was stolen, would any court allow the general evidence to go to the jury that, *472 when drunk, he always stole a horse? And yet, the general rules of evidence are the same in civil as in criminal cases. "There is no difference," says Abbott, Justice,[*] "as to the rules of evidence between criminal and civil cases; what may be received in the one may be received in the other, and what is rejected in the one ought to be rejected in the other."
The uniform habit of a party to loan money at usurious interest, was not considered by the Supreme Court of New York a legal foundation for a verdict establishing usury, although one usurious loan had been proved between the parties to the suit, and it was altogether probable, that the case under review was of that description.[] The uniform habit of Bowie, when drunk, to gamble is not a legal foundation for this verdict, although it is highly probable that the notes in controversy were executed by him for a gaming consideration.
There are other assignments of error, which it is unnecessary to notice, as the decision of this question disposes of the case.
The judgment of the court below is reversed, and mandate ordered, with instructions to award a
VENIRE DE NOVO.
Mr. Justice GRIER dissenting:
I cannot give my assent to the reversal of this judgment for the reason alleged in the opinion of the court, nor for any other.
The defence to the payment of these notes was that they were obtained by fraud from the defendant when he was drunk, and were without consideration and void.
Now, fraud will not be presumed but must be proved as other facts, either by direct proof or by circumstantial evidence which will convince the mind of a jury that a fraud *473 was committed. It is seldom that a fraud or conspiracy to cheat can be proved in any other way than by circumstantial evidence, as knaves have usually sufficient cunning to have no witnesses present who can testify directly to their fraudulent contrivances. Circumstantial evidence is often as convincing to the mind as direct testimony, and often more so. A number of concurrent facts, like rays of the sun, all converging to the same centre, may throw not only a clear light but a burning conviction; a conviction of truth more infallible than the testimony even of two witnesses directly to a fact. A cord of sufficient strength to suspend a man may be formed of threads, not one of which, alone, would support the weight of a pound or even of an ounce.
When it becomes necessary for the purpose of justice to have resort to circumstantial evidence, it is the usual course of counsel to object to each thread because it will not support the whole weight of the case. Thus, if the defence be that a note was obtained by a combination of a band of gamblers and swindlers from a drunken man, as but one fact or circumstance can be proved at a time, the learned counsel will object to the offer to prove that the payee kept a gambling-house, and will gravely quote the decision of some learned judge, that a plea of usury cannot be substantiated by proof that the plaintiff had the character of being a usurer; so also that he executed four other notes at the same time to other notorious gamblers, &c. No one of these facts standing by itself would be received as evidence in defence. But the court received evidence of the following facts:
The defendant gave evidence, by several witnesses, tending to prove that Steer kept a gambling-house in Washington City at the time of the date of the said notes, and was not engaged in any other business to the knowledge of the witnesses, and had no property to their knowledge, and that the defendant was at a social entertainment on the night of the 31st of December, 1856, and became grossly intoxicated, so that, in the opinion of said witnesses, he was unfit to transact business, and that he remained in such condition *474 when he left the place of said entertainment with the other guests who were there, and that he left in such condition between one and two o'clock in the morning of the 1st of January, 1857, and also that the body of said notes was written in the handwriting of J.R. James, who not only frequented the gaming-house of the said Steer, but other gaming-houses; and then gave evidence to prove that said James was a gambler by profession. And the defendant then offered to prove that a note dated on the 1st January, 1857, for $1000, was given by the defendant, payable to Campbell, and indorsed by him, to one Johnson, and that Campbell was a frequenter of the said gaming-house, and assisted in dealing for the said Steer. And the plaintiff objected to the said note to Campbell being admitted in evidence, but the court overruled the objection and admitted the said note to be read in evidence. After the reception of this testimony, of which this court has found no fault, the defendant proposed to add another fact, to wit: "that when the defendant was under the influence of liquor he had a propensity to gamble."
This admission of evidence of a fact, of little consequence in the decision of the case, has been seized upon here and treated as the only fact in the case, and not a circumstance, which, unless connected with others, of itself formed no defence. Now if it was wholly irrelevant, it did no harm to either party. If it was a fact, which might influence the mind of a jury, why should it be withheld from them? In a charge of fraud courts have said, what is evidence to affect the mind of a jury is often difficult to decide or distinguish. But any fact, though in itself of slight importance, will not be withheld. In such cases it is not for the court to treat the jury as persons without discernment, where the issue is one purely of fact. Now there is not a fact stated as having been proved, taken by itself, as per se a defence to the action, which counsel might not with equal justice have treated as absurd or ridiculous. But if the court below had selected this fact from all the others as peculiarly liable to objection, their judgment might have been liable to the same charge.
NOTES
[*] 1 Greenleaf's Ev., § 54.
[] 1 Phillips on Evidence, p. 143; The State v. Field, 14 Maine, 249.
[*] Rex v. Watson, 2 Starkie, 155; Regina v. Murphy, 8 Carrington and Payne, 306.
[] Jackson ex dem Norris v. Smith, 7 Cowen, 719.